# Supreme Court of Texas

No. 22-0229

In re Greg Abbott in His Official Capacity as Governor of the State of Texas; Jaime Masters in Her Official Capacity as Commissioner of the Department of Family and Protective Services; and the Texas Department of Family and Protective Services,

*Relators*

On Petition for Writ of Mandamus

JUSTICE LEHRMANN, concurring.

This case comes to us in its early stages and in a particular procedural posture: we are asked to mandamus the court of appeals for exceeding its authority under Texas Rule of Appellate Procedure 29.3 to issue temporary orders while an interlocutory appeal is pending in that court. Given Rule 29.3's express limitations on the court of appeals' authority to grant such relief—to preserve *the parties'* rights until disposition of the appeal—and the role played by the named defendants in the actions about which the plaintiffs complain, I join the Court's partial grant of mandamus relief. I write separately to highlight the narrow scope of what is before us in contrast to the broader underlying dispute, lest we lose the forest for the trees.

First, as the Court notes, this dispute began when DFPS issued a statement indicating that it was implementing policy changes in response to a letter from the Governor that closes with the instruction that "DFPS and all other state agencies must follow the law as explained in OAG Opinion No. KP-0401." However, the issue before us is not whether the plaintiffs' claims challenging those actions are meritorious. Rather, today the Court addresses only the narrow question of whether the court of appeals abused its discretion by temporarily reinstating the trial court's temporary injunction under Rule 29.3 while the interlocutory appeal of that injunction is pending. In this regard, the Court: (1) denies mandamus relief as to the portion of the order that applies to the named parties except to the extent that it enjoins the Governor from engaging in enforcement actions that he has no authority to undertake—and has not threatened or attempted to undertake—in the first instance, as such an injunction would serve no purpose; and (2) grants relief as to the portion of the order that applies to nonparties. Neither the interlocutory appeal of the trial court's temporary injunction nor the merits of the plaintiffs' underlying claims are affected by today's decision. *Ante* at 11 n.8.

Second, I find it helpful to take a step back and survey the bigger picture of the underlying dispute. The plaintiffs allege that the Governor's February 22, 2022 letter and DFPS's summary implementation of the directive in that letter resulted in an immediate, dramatic change in DFPS's interpretation of its legal obligations with respect to investigating child abuse in the context of adolescent minors receiving medical treatment for gender dysphoria. The plaintiffs'

petition references statements of numerous professional medical associations condemning the change as a rejection of evidence-based medical care for patients diagnosed with gender dysphoria that would restrict access to such care for affected adolescents.[1] The plaintiffs further allege that parents and families across the State are now fearful of the consequences of following the recommendations of their medical providers and equally fearful of the effect *not* following those recommendations will have on their children's health. Similarly, they allege, professionals with the duty to report suspected child abuse are faced with the dilemma of choosing between the possibility of referral for prosecution for failing to report conduct that has now been deemed

---

[1] In this Court, we received amicus briefs in opposition to the State's mandamus petition from numerous professional medical associations and child advocacy organizations, including: the Texas Medical Association, the American Medical Association, the Texas Pediatric Society, the American Academy of Pediatrics, the Academic Pediatric Association, the American Academy of Child and Adolescent Psychiatry, the American Academy of Family Physicians, the Association of American Medical Colleges, the American Association of Physicians for Human Rights, the American College of Obstetrics and Gynecologists, the American College of Osteopathic Pediatricians, American College of Physicians, the American Pediatric Society, the American Psychiatric Association, the Association of Medical School Pediatric Department Chairs, the Endocrine Society, the National Association of Pediatric Nurse Practitioners, the Pediatric Endocrine Society, the Ray E. Helfer Society, the Society for Adolescent Health and Medicine, the Society for Pediatric Research, the Society of Pediatric Nurses, the Societies for Pediatric Urology, the World Professional Association for Transgender Health, American Professional Society on the Abuse of Children, Children's Advocacy Institute, Futures Without Violence, Social Current, The Kempe Center for the Prevention and Treatment of Child Abuse and Neglect at the University of Colorado, The National Association of Social Workers, First Focus on Children, The National Foundation to End Child Abuse and Neglect, FosterClub, and iFoster.

3

abusive—along with the associated impact that could have on their professional licenses and livelihoods—and violating their own professional and ethical obligations.

The plaintiffs' underlying causes of action premised on these events include (1) a claim for a declaratory judgment that DFPS's statement regarding its implementation of the Governor's directive amounts to an invalid rule under the Administrative Procedures Act (APA), (2) a claim for a declaratory judgment that the Governor and the Commissioner engaged in *ultra vires* conduct, and (3) claims of various constitutional violations. Again, the merits of those claims are not before us and are not affected by our narrow decision today, which addresses only the propriety of the court of appeals' temporary order.

Third, I feel compelled to discuss an argument made by the State that the Court need not and does not address. Specifically, in seeking mandamus relief from the court of appeals' order, the State argues that it lacks an adequate appellate remedy because the order "prohibit[s] DFPS from even *investigating* possible child abuse" in cases involving gender dysphoria.[2] The dissent appears to agree with this reading of the order, which would indeed risk the irreparable harm to children that the State fears. As the Court explains, DFPS bears the responsibility of investigating reports of child abuse or neglect, which necessarily includes "assess[ing] whether a report it receives is actually 'a report of child abuse or neglect.'" *Ante* at 6. A proper judicial remedy cannot go so far as to curb that discretion beyond legislative and constitutional

---

[2] The Court's holding that the State lacks such a remedy is based on other grounds. *Ante* at 10 n.7.

4

limits. That is, the remedy for an allegedly improper limitation on DFPS's investigatory discretion cannot be the placement of a different but equally improper limitation on DFPS's investigatory discretion; either amounts to a change in the status quo that the court is seeking to preserve.

However, in my view, neither the State nor the dissent properly construes the scope of the court of appeals' order. The reinstated injunction prohibits DFPS from investigating reports "based *solely* on . . . facilitating or providing gender-affirming care . . . where the *only grounds* for the purported abuse" are "facilitation or provision of gender-affirming medical treatment." (Emphases added). The order further makes clear that the injunction is intended to restrain enforcement of "the Governor's directive and DFPS rule, both issued February 22, 2022."

In other words, the order temporarily reinstates DFPS's policies as they were prior to the February 22 directive, leaving DFPS free to screen and investigate reports based on its preexisting policies regarding medical abuse and neglect. Although the order exceeds the permissible bounds of Rule 29.3 by applying to nonparties and is erroneous on that basis, it does not, as the State implies, create entirely new restrictions on DFPS's authority to carry out its statutory obligations. That is, it does not preclude DFPS from investigating reports that a child diagnosed with gender dysphoria is receiving treatment that is medically unnecessary or inappropriate. To the contrary, it requires DFPS, as has always been its responsibility, to investigate reports of child abuse or neglect allegedly committed by a

5

person responsible for a child's care, custody, or welfare. TEX. FAM. CODE § 261.301(a). And DFPS has a detailed process for screening reports and initiating and conducting those investigations. *See* TEX. ADMIN. CODE §§ 707.447–.517. These standards apply regardless of a child's diagnosis with gender dysphoria. The order would simply bar DFPS from initiating investigations and making referrals based *solely* on the new grounds set out in the Governor's directive.

DFPS's own statements support this reading of the reach of the order. As the plaintiffs note, after the court of appeals issued the order, DFPS employees were informed that it did not prevent them from assessing intakes and beginning investigations when "*independent grounds* that warrant an investigation are reported." Accordingly, DFPS itself recognizes that the court of appeals' order—even if it were not deficient under Rule 29.3—does not bar it from investigating child abuse and neglect associated with *inappropriate* or *medically unnecessary* treatment for gender dysphoria; it simply must use preexisting criteria and procedures in determining whether a particular case justifies intervention.

By contrast, DFPS's summary change in policy pursuant to the Governor's directive—whether or not based on an erroneous view of the Governor's authority to issue it and whether or not it amounts to an invalid rule under the APA—actually served to *narrow* the discretion of DFPS employees with respect to screening reports and conducting such investigations. For example, the plaintiffs presented evidence that after the directive and agency statement were issued, employees were told that they no longer had the authority to "Priority None" cases in which

6

allegations were made that minors were receiving medical care for gender dysphoria, meaning they had no discretion to determine that such cases could be closed without further investigation even if a treating physician determined that such treatment was medically appropriate. *See* TEX. FAM. CODE § 261.3015 (authorizing DFPS, except in certain exigent circumstances, to "conduct an alternate response" to a report of abuse and to "administratively close a reported case of abuse or neglect without completing the investigation or alternative response and without providing services or making a referral to another entity for assistance if the department determines, after contacting a professional or other credible source, that the child's safety can be assured without further investigation, response, services, or assistance").[3] Yet there is absolutely no indication that DFPS's preexisting criteria and policies for

---

[3] The State appears to assert that every allegation that a minor is receiving treatment for gender dysphoria must be fully investigated in order to evaluate whether that treatment falls within a category that could amount to abuse. For example, the OAG Opinion discusses surgical procedures that could fall within the Health and Safety Code's definition of "female genital mutilation," an independently criminal act, which clearly could be investigated. And in their discussion of the protocols governing medically accepted treatment for gender dysphoria, the plaintiffs cite evidence that such treatment includes no pharmaceutical or surgical intervention before puberty and no genital surgery before the age of majority. There is no plausible argument that DFPS is foreclosed from investigating these types of nonmedically approved procedures as possible child abuse, either before or after the injunction. This is in stark contrast to medically accepted treatments like the administration of puberty-suppression drugs prescribed by a treating physician. By essentially equating treatments that are medically accepted and those that are not, the OAG Opinion raises the specter of abuse every time a bare allegation is made that a minor is receiving treatment of any kind for gender dysphoria. In my view, a parent's reliance on a professional medical doctor for medically accepted treatment simply would not amount to child abuse.

7

investigating abuse were insufficient to address allegations of medically inappropriate treatment. *See* TEX. ADMIN. CODE § 707.489 (DFPS responses to a report of abuse or neglect, depending on the circumstances, range from "administrative closure" to "an abbreviated investigation" to "a thorough investigation" to "an alternative response").

With these additional thoughts, I join the Court's opinion and concur in the partial denial and partial grant of mandamus relief.

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** May 13, 2022

8